UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TAMARA E.,

      Plaintiff,

 v.

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

Case No. C20-5466-MLP

ORDER

## I. INTRODUCTION

Plaintiff seeks review of the denial of her application for Supplemental Security Income. Plaintiff contends the administrative law judge ("ALJ") erred in assessing certain medical opinions and a third-party function report written by Plaintiff's sister. (Dkt. # 19 at 1.) As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

## II. BACKGROUND

Plaintiff was born in 1966, has a GED and some college education, and has worked as a cashier. AR at 94. Plaintiff was last gainfully employed in 2015. *Id.* at 277. In December 2016,

ORDER - 1

Plaintiff applied for benefits, alleging disability as of January 1, 2000.[1] AR at 236-41. Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* at 166-74, 178-87. After the ALJ conducted a hearing in October 2018 (*id.* at 77-127), the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 15-27.

Utilizing the five-step disability evaluation process,[2] the ALJ found:

Step one: Plaintiff has not engaged in substantial gainful activity since her application date.

Step two: Plaintiff has the following severe impairments: neurodevelopmental disorder, major depressive disorder, personality disorder, posttraumatic stress disorder, generalized anxiety disorder, and eating disorder.

Step three: These impairments do not meet or equal the requirements of a listed impairment.[3]

Residual Functional Capacity ("RFC"): Plaintiff can perform a full range of work at all exertional levels with the following non-exertional limitations: she can perform simple, routine, repetitive tasks, in a work environment with no fast-paced production requirements, few if any workplace changes, no more than simple work-related decisions, no public contact, and only occasional, superficial contact with co-workers.

Step four: Plaintiff has no past relevant work.

Step five: As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.

AR at 15-27.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1-6. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 3.)

---

[1] At the administrative hearing, Plaintiff amended her alleged onset date to her protective filing date. AR at 87-88.
[2] 20 C.F.R. § 416.920.
[3] 20 C.F.R. Part 404, Subpart P, Appendix 1.

ORDER - 2

### III. LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

### IV. DISCUSSION

**A.   The ALJ Did Not Harmfully Err in Assessing Medical Opinion Evidence**

Plaintiff contends that the ALJ erred in assessing three medical opinions, and the Court will address each disputed opinion in turn.

1.   *Legal Standards*

Where not contradicted by another doctor, a treating or examining doctor's opinion may

be rejected only for "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining doctor's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Lester*, 81 F.3d at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

        2.     *James de Jarnette, Ph.D.*

Plaintiff has known Dr. de Jarnette for years as a family friend, and he began providing counseling for her via telephone in June 2018 on a weekly basis and increased those sessions to twice weekly in October 2018. *See* AR at 83, 509. Dr. de Jarnette provided several statements and opinions between June and October 2018 (*id*. at 465-92, 509-18, 542, 546), and the ALJ gave little weight to them because they included many opinions that Plaintiff could not work, which the ALJ found conclusory, not supported by objective evidence, and concerning an issue reserved to the Commissioner. *Id*. at 25. The ALJ also noted that Dr. de Jarnette could not "be considered an objective medical source" given his status as a family friend. *Id*.

Plaintiff argues that the ALJ's reasoning is not sufficiently specific because the ALJ did not cite any evidence to support her finding that Dr. de Jarnette's opinions were conclusory and not supported by objective evidence. (Dkt. # 19 at 6.) Plaintiff has failed to establish error in this regard. Dr. de Jarnette opined repeatedly and conclusorily that Plaintiff was unable to work or that her deficits were disabling, but did not provide objective evidence to support his conclusory statements. *See, e.g.*, AR at 467 ("[Plaintiff's] fund of general knowledge is relatively good for casual living; but it is not sufficient to recognize details within the framework of employment."), 471 ("[Plaintiff's affect and mood] definitely shows depression to the degree that she could not hold a job, even if medicated."), 472 ("The hallucinations, paranoia, depression, melancholia,

ORDER - 4

1  along with the Attention and Memory sections all show serious long term disability. From all of

2  the above, it is clear that [Plaintiff] meets the Social Security definition of an SSDI eligible

3  disability."), 542 ("[Plaintiff] probably meets full SSDI criteria for 100% disability from all

4  work."), 546 ("[Plaintiff] appears to be too depressed for any and all work."). The ALJ did not

5  err in finding that these statements were conclusory, unsupported by objective evidence, and

6  invading an issue reserved to the Commissioner (whether Plaintiff is disabled). *See* 20 C.F.R.

7  § 416.927(d) ("We are responsible for making the determination or decision about whether you

8  meet the statutory definition of disability. . . . A statement by a medical source that you are

9  'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). To

10 the extent that Dr. de Jarnette's treatment notes indicate certain deficits, the ALJ included several

11 significant mental limitations in the RFC assessment and thus did not entirely disregard Dr. de

12 Jarnette's findings, as Plaintiff suggests. (Dkt. # 19 at 8.)

13     Plaintiff also argues that the ALJ erred in discounting Dr. de Jarnette's opinion based on

14 his familial friendship with her, because ALJs should "not assume that a doctor would lie to

15 assist a patient in obtaining disability benefits." (Dkt. # 19 at 8-9.) The ALJ here did not assume

16 Plaintiff's suggested position. The ALJ reasonably found that Dr. de Jarnette's objectivity was

17 undermined by his longtime friendship with Plaintiff's family. When considered alongside the

18 other valid reasons the ALJ provided for discounting Dr. de Jarnette's opinions, the Court finds

19 that the ALJ reasonably considered the extent and context of Plaintiff's relationship with Dr. de

20 Jarnette in determining the weight to afford his opinions. *See* 20 C.F.R. § 416.927(c)(6) ("When

21 we consider how much weight to give to a medical opinion, we will also consider any factors

22 you or others bring to our attention, or of which we are aware, which tend to support or

23 contradict the medical opinion.").

ORDER - 5

3.     *Thomas Genthe, Ph.D.*

Dr. Genthe examined Plaintiff in January 2017 and completed a DSHS form opinion describing Plaintiff's symptoms and limitations. AR at 385-92. Dr. Genthe noted that at the time of the examination, Plaintiff was not receiving any treatment or taking any medication and he opined that with treatment, Plaintiff should be able to resume full-time work in six months. *Id*. at 388. Dr. Genthe identified mostly moderate limitations at that time, with marked limitations in Plaintiff's ability to complete detailed tasks and adapt to changes. *Id*. at 387-88.

The ALJ gave great weight to Dr. Genthe's opinion, finding the opinion to be consistent with the evidence as a whole and with Plaintiff's demonstrated level of functioning. AR at 24. The ALJ indicated that she accounted for the marked limitations identified by Dr. Genthe by limiting Plaintiff to simple, routine, repetitive tasks with few, if any, workplace changes. *Id*.

Plaintiff does not dispute that the ALJ accounted for Dr. Genthe's opinion as to marked limitations, but argues that the ALJ nonetheless failed to account for the moderate limitations Dr. Genthe identified. (Dkt. # 19 at 11-12.) Plaintiff contends that "[o]ne would reasonably expect such an individual to have some level of limitation in her ability to remain on task and maintain regular attendance without special supervision." (Dkt. # 19 at 12.) But the ALJ's RFC assessment does include a prohibition on fast-paced production requirements and restricts Plaintiff to simple work-related decisions (AR at 21), and Plaintiff has not shown that any of the moderate limitations identified by Dr. Genthe are in fact inconsistent with the RFC assessment. An ALJ's RFC assessment need not be *identical* to a credited medical opinion, but must be *consistent*, and Plaintiff has failed to show that the ALJ's RFC assessment is inconsistent with the moderate limitations identified by Dr. Genthe. *See Turner v. Comm'r of Social Sec. Admin.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010) (ALJ need not provide reason for rejecting physician's

opinions where ALJ incorporated opinions into RFC; ALJ incorporated opinions by assessing RFC limitations "entirely consistent" with limitations assessed by physician).

Accordingly, because Dr. Genthe's opinion is reasonably consistent with the ALJ's RFC assessment, the Court finds that Plaintiff has not met her burden to show harmful legal error in the ALJ's assessment of the moderate limitations included in Dr. Genthe's opinion.

4.  *Nickolas Jones, Ph.D.*

Dr. Jones performed a psychological examination of Plaintiff in October 2017 and wrote a narrative report describing her symptoms and limitations. AR at 449-54. Dr. Jones opined that Plaintiff did not have any developmental disability, but does experience "several mild to moderate challenges in cognitive and memory functioning" and thus "will continue to struggle in academic and employment settings with learning and remembering new tasks." *Id*. at 454. Dr. Jones went on:

> These mild deficits coupled with the significant amount of anxiety that she experiences in a variety of ways and settings, cause high levels of distress for her, such that she will find it difficult to find and maintain employment. She will likely struggle to attend work regularly as her symptoms will get in the way of regular attendance. She would not do well to work in busy, high traffic environments.

*Id*.

The ALJ did not explicitly weigh Dr. Jones's opinion, although she did refer to Dr. Jones's findings in the decision. *See* AR at 18-19, 23-24. The ALJ explained that although Dr. Jones recorded Plaintiff's allegations of social anxiety, difficulty leaving her home, intrusive thoughts, and becoming easily overwhelmed, these allegations were contradicted by Plaintiff's ability to attend community college, take her dog outside several times per day, work in her garden every morning, shop independently at Wal-Mart, and attend medical appointments on her own. *Id*. at 19. The ALJ also noted that Dr. Jones's findings regarding Plaintiff's limitations as to

ORDER - 7

attention, concentration, and persistence suggested that Plaintiff could not complete detailed or complex tasks, but Plaintiff's activities (driving, shopping, gardening, managing finances, attending appointments) show that she can nonetheless function to some degree. *Id.* at 19. The ALJ further contrasted Plaintiff's allegations of difficulty handling stress and adapting to change with her report to Dr. Jones that her granddaughter was living with her at the time of the evaluation. *Id.* at 19 (citing *id.* at 451).

At a later point in the decision, when evaluating Plaintiff's allegations of low energy, low motivation, and difficulty leaving her home, the ALJ noted that Plaintiff told Dr. Jones that she was exercising 2-3 times per week and making arts and crafts to sell. AR at 23 (citing *id.* at 450). The ALJ also emphasized that Dr. Jones found that the Plaintiff's full-scale IQ test result was invalid as too low, and did not reflect her average abilities in many areas. *Id.* at 23-24 (citing *id.* at 451). The ALJ again summarized Dr. Jones's test results to explain why she found Plaintiff capable of performing simple, routine, and repetitive tasks, and noted that Plaintiff's activities demonstrated that she could sustain a routine, attend to her own needs and the needs of others, and adapt to simple changes without exacerbating her symptoms. *Id.* at 23-24.

As detailed here, the ALJ's decision contains many references to Dr. Jones's report, although the ALJ did not explicitly weigh Dr. Jones's opinion. The ALJ generally credited Dr. Jones's findings, although the ALJ did explain why she discounted the allegations Plaintiff made to Dr. Jones and others, and Plaintiff has not challenged any of the ALJ's evaluation of Plaintiff's testimony. Specifically, the ALJ cited Dr. Jones's opinion as evidence of Plaintiff's alleged difficulties in remembering information, leaving her house, interacting with others, concentrating, and managing herself, and explained why she found that Plaintiff's deficits were less severe than alleged and would be accommodated by the RFC restrictions. AR at 18-19,

23-24. The only portion of Dr. Jones's medical source statement that could be arguably inconsistent with the ALJ's RFC assessment is Dr. Jones's indication that Plaintiff would struggle to maintain regular work attendance, and the ALJ's decision explains why she discounted Plaintiff's similar subjective allegations: the ALJ cited Plaintiff's failure to engage in treatment when she is not applying for disability benefits, Plaintiff's failure to report physical ailments to providers that she now claims are disabling, Plaintiff's minimal work history, and Plaintiff's activities (*e.g.*, ability to shop independently, go outside multiple times per day to care for her dog and garden, attend medical appointments, care for her granddaughter on a full-time basis). *Id*. at 22-23. Although the ALJ's assessment of Dr. Jones's opinion could have been more explicit, the Court can discern the ALJ's path and thus finds no harmful error in the ALJ's failure to weigh Dr. Jones's opinion, given that the ALJ explained why she (for unchallenged reasons) discounted Plaintiff's allegations of *inter alia* an inability to work on a regular and continuing basis, with problems leaving her home. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (indicating if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity" the ALJ's decision should be upheld (quoting *Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014))).

Plaintiff points to an additional part of Dr. Jones's opinion (dkt. # 23 at 4), in arguing that the ALJ's RFC assessment conflicts with Dr. Jones's opinion: Dr. Jones found that Plaintiff would "struggle . . . with learning and remembering new tasks." AR at 454. Plaintiff argues that this portion of Dr. Jones's opinion is consistent with disability because "[a]n individual who cannot learn new tasks is not capable of competitive work, even simple work[.]" (Dkt. # 23 at 4.) But Dr. Jones did not opine that Plaintiff could not learn any new tasks: Dr. Jones opined that Plaintiff would struggle to an unspecified degree with learning and remembering new tasks. The

ALJ's RFC assessment restricts Plaintiff to performing simple, routine, repetitive workplace tasks, with few, if any, workplace changes. *See* AR at 21. This portion of the RFC assessment reasonably accommodates Dr. Jones's opinion as to Plaintiff's deficit in learning new tasks. Plaintiff has not established that the ALJ erred in failing to provide reasons to discount this portion of Dr. Jones's opinion.

For all of these reasons, because the ALJ's RFC assessment is largely consistent with Dr. Jones's opinion, and the ALJ provided several unchallenged reasons to discount the symptoms and limitations Plaintiff reported to Dr. Jones, the Court finds that any error in the ALJ's failure to explicitly weigh Dr. Jones's opinion is harmless.

### B.   The ALJ Did Not Harmfully Err in Assessing a Lay Statement

Plaintiff's sister, Gladys Hunsaker, provided two statements regarding Plaintiff's functioning. *See* AR at 288-96. The ALJ gave some weight to Ms. Hunsaker's statements, finding that her description of Plaintiff's activities in her third-party function report "strongly contradicted" Plaintiff's testimony, and that Ms. Hunsaker's headaches questionnaire was unsupported by any objective findings in the record. *Id*. at 25. Indeed, earlier in the decision, the ALJ explained that Plaintiff's physical complaints (anemia, dizziness, nausea, and migraine headaches) were "generally not reported in the treatment notes." *Id*. at 25.

The ALJ can reject the testimony of lay witnesses only upon giving germane reasons. *Smolen v. Chater*, 80 F.3d 1273, 1288-89 (9th Cir. 1996). Plaintiff argues that the ALJ erred by failing to provide any reasons to *discount* Ms. Hunsaker's third-party function report. (Dkt. # 19 at 14-15.) Indeed, the ALJ cited Ms. Hunsaker's report as inconsistent with Plaintiff's testimony, which was discounted for the reasons explained earlier in the decision. AR at 25. Plaintiff has failed to establish that the ALJ erred in this respect, however: Ms. Hunsaker's statement

describes Plaintiff's limitations, but her description of Plaintiff's limitations is generally consistent with the limitations described in ALJ's RFC assessment. *Compare id.* at 21 *with id.* at 288-95. Accordingly, because Ms. Hunsaker's report is not inconsistent with the ALJ's RFC assessment, the ALJ did not reject it and was not required to provide reasons to reject it. *See Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (holding that an ALJ "may not reject 'significant probative evidence' without explanation" (quoting *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984))). Plaintiff has not met her burden to show error in the ALJ's assessment of Ms. Hunsaker's third-party function report.

## V.   CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED,** and this case is **DISMISSED** with prejudice.

Dated this 1st day of March, 2021.

MICHELLE L. PETERSON
United States Magistrate Judge